DANIEL J. BRODERICK, #89424
Federal Defender
LINDA C. HARTER, CA Bar #179741
Chief Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorney for Defendant
TIMOTHY CRAIG RANDALL

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-341 EJG |
| Plaintiff, | |
| v. | DEFENDANT'S OBJECTIONS AND SENTENCING MEMORANDUM |
| TIMOTHY CRAIG RANDALL, | Date: March 2, 2007 |
| Defendant. | Time: 10:00 a.m. |
| | Judge: Hon. Edward J. Garcia |

Timothy Randall moves this Court to 1) to correct his presentence report as outlined further below; 2) to impose a sentence of 60 months which is a reasonable sentence under the circumstances of this case and is also the sentence agreed upon in the written plea agreement between the parties.[1]

**I.   GUIDELINES OBJECTIONS**

---

[1]The written plea agreement in this case was entered into pursuant to FRCP 11(c)(1)(C). It is a so-called 'specific plea agreement'.

The defense objects to the application of the cross reference in USSG 2G1.3(c)(1) which raises the applicable base offense level from level 24 (as provided in USSG 2G1.3) to level 32.[2]

The defendant pled guilty to a violation of 18 U.S.C. § 2422(b) - Use of Interstate Commerce to Induce a Minor to Engage in Criminal Sexual Activity. The applicable guideline for that offense is USSG 2G1.1. USSG 2G1.3(c)(1) states that "If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1...". Section 2G2.1 of the guidelines is the section reserved for offenses involving the Sexually Exploitation of a Minor by the Production of Sexually Explicit Material.

**A. The Government Has Not Proven the Cross-Reference Applies by Clear and Convincing Evidence.**

In United States v. Howard, 894 F.2d 1085, 1090 (9th Cir. 1990), the Ninth Circuit held that the government bears the burden of proof whenever it seeks to adjust a base offense level upwards. See also United States v. Charlesworth, 217 F.3d 1155, 1158 (9th Cir. 2000). The Court is not permitted to treat factual statements in the probation presentence report as presumptively accurate, as doing so would relieve the government of its sentencing burden. When a defendant raises objections to the presentence report, the Court may not simply rely on the factual statements in the report, but is obligated to resolve the factual dispute. United States v. Ameline, 409 F.3d 1073, 1086 (9th Cir. 2005)(en banc).

---

[2] The resulting change in the advisory range is that rather than a range of 57 to 71 months under 2G1.3, the advisory sentencing range is more than doubled to 135 to 168 months under 2G2.1.

Defendant's Sentencing Memorandum -2-

The Ninth Circuit has held that due process is generally satisfied by using a preponderance of the evidence standard to prove sentencing factors set forth in the Sentencing Guidelines. See United States v. Jordan, 256 F.3d 922, 927 (9th Cir. 2001) (citation omitted). However, the Circuit has repeatedly held that when a sentencing factor has an extremely disproportionate effect on the sentence, the government must prove the sentencing enhancement by clear and convincing evidence. Id.; United States v. Bonilla-Montenegro, 331 F.3d 1047, 1050 (9th Cir. 2003). Here, the cross reference to USSG §2G1.2 more than doubles Mr. Randall's sentence. Therefore, the government must prove application of the cross-reference by clear and convincing evidence.

**B. The Cross-Reference does not Apply as a Matter of Statutory Construction.**

As a preliminary matter, Mr. Randall was not charged with any statute prohibiting or involving as an element the making of visual depictions of minors engaged in sexually explicit conduct. That said, the cross-reference does not apply because on its face it is inapplicable. It applies only  "if the offense involved causing, transporting, permitting or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."

Here, Mr. Randall did not transport, permit or offer by notice or advertisement a minor to engage in sexually explicit conduct for the purpose of making a visual recording.   Probation argues that Randall persuaded, induced and enticed a minor to engage in sexually explicit conduct for the purpose of creating visual depictions when he engaged in internet chatter regarding taking photos of sexual activity with a nonexistent minor.   This falls far short of the cross-reference's requirement.

Defendant's Sentencing Memorandum -3-

The problem with the probation report's argument is that it falls short of proof that Mr. Randall acted with the required intent, that is, that he acted "for the purpose of" producing a visual depiction. The cross-reference requires proof of the defendant's subjective intent at the time of the offense he plead guilty to. It requires proof that his actions for the purpose of making visual depictions. A previous discussion, over the internet, with a nonexistent minor, regarding the possibility of taking photos of sexual activity does not prove by clear and convincing evidence that the defendant acted for that purpose on the occasion he pled guilty to.

In United States v. Crandon, 173 F.3d 122 (3rd Cir. 1999) the defendant traveled and met with an actual 14 year old minor. In that case the defendant had sex with the minor and took 48 pictures of the minor, two of which were of the defendant engaged in a sexual act with the minor. At sentencing the district court applied the cross reference in USSG 2G1.3(c)(1) based on those facts alone. The Third Circuit remanded the case because the government had not put on any evidence that the defendant's subjective intent during the commission of the crime indicated that he acted for the purpose of taking sexually explicit photos. If Congress "said what it meant" when it wrote this guideline, and the guideline "means what it says", this Court has to find by clear and convincing evidence that Mr. Randall caused, or transported, or permitted, or offered or sought by notice or advertisement, a minor to engage in sexually explicit conduct and that he acted for the purpose of producing a visual depiction of such conduct. This is not what the government has alleged or proven happened in this case. The government has in fact agreed that USSG 2G2.1 does not apply to this case, and the Court should also decline to

Defendant's Sentencing Memorandum -4-

apply the cross-reference.

**C. The Cross-Reference Does Not Apply Without Actual Visual Depictions**

There is not a single reported case in this circuit that defense counsel could find on this cross-reference that does not involve actual visual depictions of actual minors. In every reported case on the cross-reference the defendant in fact took visual depictions or sent them or otherwise participated in taking or sending photographs or videos of minors engaged in sexually explicit conduct; indeed, the making of visual depictions is part of the heartland of the guideline. E.g., United States v. Hughes, 282 F.3d 1228 (9th Cir. 2002), United States v. Wright, 373 F.3d 935 (9th Cir. 2004); United States v. Whitesell, 314 F.3d 1251 (11th Cir. 2002); United States v. Tashbook, 144 Fed. Appx. 610, 2005 U.S. App. LEXIS 17567 (9th Cir. 2005); United States v. Chapman, 60 F.3d 894 (1st Cir. 1995). In fact, the cases make clear that even in cases where sexually explicit photos are taken, the cross reference does not necessarily apply.  See Hughs, at 130-131, ("...it may be possible for an individual to wilfully take a sexually explicit photograph, but not for the purpose of producing sexually explicit material warranting a section 2G1.2 base level.")

This fact is not happenstance. The cross-reference was designed to punish the making of visual depictions of children engaged in sexually explicit conduct when the making of such depictions is an "integral part of the defendant's criminal conduct". Hughes, 282 F.3d at 1230. Here, no actual pictures or videos were taken, and no physical contact between Randall and any minor occurred. The idea to make visual depictions was "incidental" to the commission of the offense and separate in time so the cross-reference should not be applied. Id.

Defendant's Sentencing Memorandum -5-

1    The cross-reference does not apply and the Court should grant the
2    defendant's motion to correct the PSR.

## II.    The Appropriate Sentence in this case is 60 Months.

Regardless of this Court's ultimate ruling on the applicable advisory guideline the parties are in agreement that a 60 month sentence is appropriate.

The Supreme Court decision in <u>Booker</u> dramatically changed sentencing procedures in federal court. <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). <u>Booker</u> held that <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) applied to the federal sentencing guidelines and that a defendant's right to a jury trial under the Sixth Amendment precludes federal judges from finding enhancing facts in order to increase the sentence imposed. Clearly the mandates of the federal sentencing guidelines violated this principle. The remedy, according to the Supreme Court in <u>Booker</u>, is that although federal judges must consider the guideline range, they must also consider all of the other factors listed in 18 USC § 3553(a) and impose a sentence "***sufficient, but not greater than necessary***" to comply with the principles and purposes of sentencing set forth in 18 USC § 3553(a).

In directing the courts to consider all of the factors set forth in 18 USC § 3553(a), the <u>Booker</u> decision brings into play factors that the guidelines had previously directed the courts to ignore. Prior to this decision, the only factor about a defendant's 'history' that the guidelines allowed the trial court to consider was his or her prior convictions. Drug or alcohol dependence was not considered (5H1.4), lack of guidance as a youth was not considered (5H1.12), families ties and responsibilities were not considered (5H1.6), mental and emotional

Defendant's Sentencing Memorandum -6-

conditions were not ordinarily considered (5H1.3) nor was civic or military contributions to society (5H1.11).  All of these previously unconsidered factors are part of each individual defendant's history and characteristics and now must be evaluated by the sentencing court. As U.S. District Court Judge Lynn Adelman has stated:

> Sentencing will be harder now than it was a few months ago.  District courts cannot just add up figures and pick a number within a narrow range.  Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual.  Booker is not an invitation to do business as usual.

United States v. Ranum, 2005 U.S. Dist Lexis 1338, ED Wis. (January 19, 2005).

Judge Adelman distilled the factors 18 USC §3553 into three categories: "the nature of the offense, the history and character of the defendant, and the needs of the public and the victims of the offense".  Id.  As these categories seem to best distill the essential meaning of § 3553(a), the defense will utilize them in this memorandum.

A.  The Nature of the Offense

   1.  The Guidelines.

As indicated in this memorandum, the defense believes that the applicable guideline range is 57 to 71 months.  The parties have stipulated, in fact, that this is the applicable guideline range and that the Court should impose a 60 month sentence.[3]  Further, the parties jointly agree that regardless of the Court's determination regarding the advisory guideline level, a 60 month sentence best comports with the purposes of 18 U.S.C. § 3553(a).

The defense notes that during its research regarding this case,

---

[3] 60 months is the mandatory minimum in this case and thus the advisory guideline range becomes 60 to 71 months.

Defendant's Sentencing Memorandum -7-

the reported cases that resulted in the application of the cross-references in 2G1.3(c)(1) and therefore in much higher guideline sentences all involved cases with actual minors either involved in sexual conduct with the defendant or with actual minors depicted in sexually explicit images possessed by the defendant or both.  A 60 month sentence in this case would be more like sentences in similar cases where no actual minor was involved in any way.

**2. The Offense.**

Mr. Randall's actions in this case and the dialog he engaged in on the internet are troubling on many levels.  While his words and actions are reprehensible, it should be taken into account that Mr. Randall never interacted in any way with any actual minors.  All of the 'chats' he engaged in and the meeting he arranged were done with adult operatives belonging to a group called 'Perverted Justice'.  The presentence report all but ignores this very essential fact in its analysis of the appropriate sentence in this case.

The simple truth is that crimes that do not cause actual harm to actual victims are often, and with good reason, treated very differently at sentencing.  For example, a DUI may involve a jail sentence for the defendant, but a DUI that causes the death or serious injury of a person usually means a long prison sentence.  This is because it is generally accepted by society that offenders who cause harm to innocent victims should be punished more severely.

Mr. Randall's traveled across state lines to meet up with someone he believed to be a minor is criminal - and he knew it was wrong.  Yet the court should consider in mitigation not only that no real child was involved but also that Mr. Randall, on more than one occasion, decided not to show up for arranged meetings with the pretend minor.  (See

Defendant's Sentencing Memorandum -8-

paragraph 13 of the presentence report.)  On the occasion he did appear he did so after some serious encouragement by Perverted Justice operatives.  The Perverted Justice worker told him she[4] was 'trusting him' to show up and then told him "you better not stand me up again". Later she tells him that she feels like his is not going to really meet with her and equates that with the abandonment she felt when her father left her.  She goes on to exhort him to "promise" that he will not abandon her like her father did and then states twice "you got to come meet me".  After that she tells the defendant "if you don't come next time, forget it, makes me to sad".[5]

The unique factor in this type of case is that the defendant was not known to the police, nor was he the target of any particular investigation until he responded to the enticements posed by the Perverted Justice operative on the internet.  Mr. Randall was a lonely, depressed man who had recently lost his wife.  He responded to the online of manipulation of operatives who skillfully encouraged his sexual discussions and advances.  This is the same organization that regularly engages in this type of activity and has meetings televised for reality TV shows who sell this as 'entertainment' to the viewing public.  These operatives are skilled at this sort of manipulation.

It should be noted also in this particular case that the defendant's computer was seized and a forensic search was performed. No other contacts with minors or even fake minors were indicated in the

---

[4] I am using the feminine pronoun, however it is unknown to the defense whether the defendant was chatting on the internet with a male or female adult working with Perverted Justice.  Persons of both genders engage in such internet stings for this organization.

[5] The defendant is NOT arguing that he was entrapped as that term applies to a legal defense - he acknowledges that he readily engaged in the conversations with the pretend minors.  The point is that it was as though he had a personal cheerleader encouraging him to break the law.

Defendant's Sentencing Memorandum -9-

forensic exam.  Further, this sort of charged is very often accompanied by allegations of the possession of child pornography.  In this case, Mr. Randall never engaged in the viewing, possession or trade of child pornography and that was confirmed by the forensic examination in this case which yielded absolutely no such images.

**B.   The History and Character of the Defendant**

This defendant has never been convicted of or even charged with any crime.  He has lived 58 years in this country as a productive and law abiding citizen.  He was raised in a military family and moved many times as a child.  He was drafted (briefly) into military service.[6]  He raised children who are now grown, law abiding citizens.  He served for 20 years as a correctional officer in the Nevada State Prison system.

Following the death of his wife, whom he loved very deeply, Mr. Randall seems to have allowed himself to slip into depression and alcohol abuse.  He suffered a precipitous decline from his previous law-abiding nature into behavior, on the internet, that started as vaguely obscene and ended with his actions in this case.  There is no doubt that the anonymous character of the Internet fuels some extraordinary candor and behavior between strangers.  The anonymity of the internet, the ability to roleplay and anonymously express outrageous ideas are freedoms which do not exist in face-to-face interactions.  Experts have said that the use of the internet creates "an intoxicating parallel universe with real-world implications" and has encouraged people to take extraordinary actions they never would have otherwise considered.  Diane Anderson, <u>Suspicion Confirmed</u>,

---

[6] He was discharged for medical reasons having to do with his feet and his eyesight.

Defendant's Sentencing Memorandum -10-

Newsweek, October 2, 2000 at 74T.  The anonymous nature of the internet permits conversation that is unbounded by the usual inhibitions or conventions of society.  This can be a seductive and dangerous environment for the lonely and disconnected members of society.  Mr. Randall began reaching out on the internet in a time in his life when he was not at his best.  It was a time when he was depressed, lonely and had temporarily lost the moral compass that had previous guided him.  The anonymous nature of the internet only allowed him to fall further and further away from his previous self.

Mr. Randall's actions in this case were criminal and he deeply regrets them.  He confessed and expressed remorse immediately after his arrest - giving a lengthy video taped confession to authorities.  He was initially charged in state court and following his release on bond he went to his property in South Dakota, saw to it that his cousin could take care of his dog and attempted suicide.  The suicide attempt was thwarted by his cousins and in July Mr. Randall turned himself in to authorities for immediate extradition to California.  Once he was charged in federal court Mr. Randall immediately informed anyone who would listen that he wanted to plead guilty.

There is no indication that Mr. Randall has any sort of paraphilic disorder (no indication or allegation that he is a pedophile).[7]  He recognized that his conduct was wrong and criminal.  Although he suffers from depression, he has no mental illness that would make him a risk to society - no mental illness that would make him feel compelled in any way to re-offend.  He is being treated and medicated for depression but not for any sort of psychosis.  He does not use illegal

---

[7] There is no reported history of abuse of any kind in Mr. Randall's family history.  Mr. Randall has never been the victim of sexual abuse from anyone else either.

Defendant's Sentencing Memorandum -11-

drugs.  His depression stems from the loss of his wife and his shame and remorse for his criminal actions.

**C.   The Needs of the Public**

   **1.   Mr. Randall is not likely to re-offend.**

Mr. Randall lived for 58 years as a productive member of society who never even had any 'brushes' with the law.  Except for this single period in his life this defendant has been a good citizen.  He appreciates the wrongfulness of his behavior and has no mental disorder that would lead him to commit this or any similar crime in the future.

Whatever the length of Mr. Randall's sentence he will be closely supervised upon his release.  He will have to register and he will be supervised by federal probation.  He will not have access to the internet.  Further, Mr. Randall does not need any access to the internet or computers for employment or any other purposes.  Upon his release he will have a small income from his pension.  He would like to return to his property in South Dakota where he intends to live out his life near his family members there.

   **2.   Needs of the Victim and/or Restitution Issues**

There is no actual child victim in this case.  The only victim here is society in general.  There are no restitution issues.

   **3.   The Need for Rehabilitation**

There is no need for any counseling, treatment or rehabilitation in this case that cannot be accomplished while this defendant is on supervision in the community.

   **4.   The Need for Just Punishment and Deterrence**

A 60 month or 5 year sentence of incarceration is sufficient punishment in this case.  The parties jointly feel that such a sentence is lengthy enough to promote respect for the law, to reflect the

Defendant's Sentencing Memorandum -12-

seriousness of this defendant's conduct and to provide adequate deterrence.  (This sentence is significantly longer than most of the sentences for similar crimes in state court that are broadcasted on television shows such as "To Catch a Predator".)  Certainly to Mr. Randall, the prospect of five years behind bars is a significant deterrence and is significant punishment for his conduct.

### III. CONCLUSION

At sentencing the parties will both request that this Court impose a sentence of 60 months.  The parties, who have both dealt with many similar such cases, spent a good deal of time looking at the facts and circumstances of this case and this defendant and have come to the conclusion that such a sentence is sufficient to address all of the purposes of 18 U.S.C. § 3553(a).

Dated:  February 26, 2007

Respectfully submitted,

DANIEL J. BRODERICK
Federal Defender

/s/ Linda C. Harter
_____
LINDA C. HARTER
Chief Assistant Federal Defender
Attorney for Defendant
TIMOTHY CRAIG RANDALL

Defendant's Sentencing Memorandum -13-